742 So.2d 941 (1999)
David M. SMITH, PlaintiffAppellee,
v.
VENTURA FOODS, Defendant Appellant.
No. 99-104.
Court of Appeal of Louisiana, Third Circuit.
June 30, 1999.
*942 Michael Keith Leger, Opelousas, for David M. Smith.
Katherine Marie Loos, Lafayette, for Ventura Foods.
Before WOODARD, AMY, and SULLIVAN, Judges.
SULLIVAN, Judge.
Ventura Foods appeals a judgment in favor of David Smith, contending that the workers' compensation judge erred in finding that Smith sustained a work-related "accident" and in awarding supplemental earnings benefits (SEBs), medical expenses, penalties, and attorney fees. Smith has answered the appeal, seeking an increase in penalties and attorney fees. For the following reasons, we affirm as amended.

Discussion of the Record
Smith testified that his back began hurting on the afternoon of Thursday, November 13, 1997, as he was "reworking" several defective thirty-five-pound containers on production "line three" at Ventura Foods. He explained that this work required him to lift the containers from the conveyor belt then twist away from the belt to place them on the floor. Smith testified that he reported his back pain that day to his supervisor, Willie Thibodeaux, who told him not to lift anything else. According to Smith, Thibodeaux then met with two other supervisors, Chris Chachere and Ben Badeaux, about his complaints. After this meeting, the three supervisors advised Smith not to lift anything else and to see a doctor. Smith scheduled an appointment for Monday, November 17, 1997, with Dr. Michael Montgomery, who was his personal physician as well as Ventura Foods' company doctor. In the meantime, Smith continued to work, but only on light duty.
Thibodeaux, Chachere, and Badeaux denied that Smith reported any back complaints on November 13, 1997. According to Thibodeaux, Smith informed him on Friday, November 14, 1997, that if he had to "rework" the thirty-five-pound containers, he would hurt his back. Upon discovering that Smith's personnel records did not contain any lifting restrictions, Thibodeaux placed Smith on light duty and told him to obtain a doctor's excuse. Chachere, a *943 packaging supervisor, testified that Smith was scheduled to begin "reworking" at approximately 9:00 a.m. on Friday. At that time, Smith reported that if he had to "rework" the defective containers he would injure his back. Badeaux, a packaging engineer, also testified that he was not informed until Friday that Smith could not perform the "rework" operations. It is undisputed that Smith did not request or file an accident report.
Smith saw Dr. Montgomery as scheduled on November 17, 1997. Dr. Montgomery's records for this visit state, in part: "David is in with his back hurting. He just recently returned to work and his new job has him lifting pails and doing some turning and twisting. He claims that the work is what is causing the problem." (Emphasis added.) After an examination revealed full range of motion, Dr. Montgomery noted no evidence of a back problem. Instead, he diagnosed inflammation of the prostate (prostatitis), for which he had treated Smith in the past, and he released Smith to work with no restrictions. Dr. Montgomery had previously treated Smith for acute lumbar strain in 1990, 1994, 1995, and 1996. Smith related his pain on these occasions to lifting at work, and he recovered after taking medications and remaining off work from two days to one week.
Unsatisfied with Dr. Montgomery's findings, Smith saw Dr. Thomas Dewey the following day, November 18, 1997. At this visit, Dr. Dewey recorded:
This patient has had problems with his low back intermittently since 1990. Apparently he has had to take off 1-2 weeks a year because of this back pain. He works over at Louanna Foods. The last episode was 11/13/97. His back is aggravated by heavy lifting. Patients [sic] pain is confined in the lower back area.
(Emphasis added.)
Dr. Dewey also noted tenderness in the lower back with mild limitation of motion. He diagnosed chronic lumbar strain, recommended physical therapy, and released Smith to regular work duties, but with a twenty-pound maximum lifting capacity.
On a form at Dr. Dewey's office, Smith answered "no" to the questions, "Were you injured?" and "Is this a compensation case?" Explaining these responses at trial, Smith testified that "I knew my back was hurting, but I didn't knownothing fell on me or I didn't fall and slip and break nothing, so I put `no,' you know." Smith also said that when he filled out the form he did not really know what a compensation case was.
Smith testified that on November 17, 1997, when he presented Dr. Montgomery's release with no restrictions, he was again assigned to "rework" the thirty-five-pound containers on "line three." The next day, when Smith presented the note from Dr. Dewey that contained the twenty-pound lifting restriction, he again met with his supervisors and with David Morgan, the packaging manager. Morgan testified that the note was insufficient because it did not state the duration of the restriction. Smith returned to Dr. Dewey, who issued another release stating that the twenty-pound lifting restriction was permanent. At this point, Bill Hausman, vicepresident of operations, told Smith that he would investigate whether Ventura Foods had a position that could accommodate Smith's physical limitations.
On Monday, November 24, 1997, Hausman and Suzanne Fontenot, of the human resources department, informed Smith that he was being terminated because Ventura Foods did not have an opening within Dr. Dewey's restrictions. Hausman testified that Smith first inquired about a job as a lab technician and then about the company's disability plan. After Hausman told Smith that neither option was available, Smith complained that he was being treated unfairly because he had worked for the company for ten years and had hurt his back on the job. Hausman replied that he had no knowledge of a work-related *944 accident, but that he would investigate and get back with Smith if necessary.
Fontenot recalled that Thibodeaux had inquired if Smith's personnel file contained any lifting restrictions, but Thibodeaux did not report that Smith had hurt his back while working, and no one filed an accident report with her. In investigating the claim, she spoke with the nurses in Dr. Montgomery's office, who indicated that Dr. Montgomery did not believe Smith's problem was work-related. She did not request any narrative reports from either Dr. Montgomery or Dr. Dewey because, without an accident report, she considered those visits to be personal. Fontenot did not conduct a further investigation after suit was filed, but she did receive some medical reports approximately two weeks before trial. She acknowledged that Dr. Dewey's records indicated that Smith's back problem may have been aggravated by his work.
After his termination, Smith continued to see Dr. Dewey. On December 4, 1997, Dr. Dewey ordered an MRI that revealed mild bulging at L2-3 and L4-5 and a right paracentral disc protrusion at L5-S1. After receiving these results, Dr. Dewey advised Smith to "participate in as light of work as possible." Dr. Dewey noted that Smith could not recall one specific event causing his lower back pain; however, he was aware of Smith's episodic history of back complaints that Smith related to his work. Dr. Dewey believed that the protrusion at L5-S1 was the result of Smith's work-related activities. He recommended a neurosurgical consult with Dr. Thomas Bertuccini, but Smith could not afford it.

Accident
An employee may receive workers' compensation benefits upon proof of "personal injury by accident arising out of and in the course of his employment." La.R.S. 23:1031(A). La.R.S. 23:1021(1) defines "accident" as "an unexpected or unforeseen actual, identifiable, precipitous event happening suddenly or violently, with or without human fault, and directly producing at the time objective findings of an injury which is more than simply a gradual deterioration or progressive degeneration."
A worker's testimony alone may be sufficient to prove an accident by a preponderance of the evidence if no other evidence discredits or casts serious doubt on the worker's version of events and the worker's testimony is corroborated by circumstances following the incident. Bruno v. Harbert Int'l, Inc., 593 So.2d 357 (La. 1992). "The trial court's determinations as to whether the worker's testimony is credible and whether the worker has discharged his or her burden of proof are factual determinations not to be disturbed on review unless clearly wrong or absent a showing of manifest error." Id. at 361.
In finding Smith met his burden of proving that he sustained an accident, the workers' compensation judge stated:
I have based this decision on the testimony of the plaintiff, which I found was corroborated by the medical records of Dr. Montgomery, the first doctor that he saw, from his report dated November the 17th, in which he reported to Dr. Montgomery that he was lifting a lot of pails at work from a new position ... and that it was that new position that caused the accident.

I also found thatthe question of why he did not report a specific incident was something similar that apparently occurred over the years with his treatment with Dr. Montgomery. He had had other events in the past at Ventura Foods, and this was one similar to that. So the specification of an accident was not a problem to me in that he did get fairly specific with Dr. Montgomery and with his employers.

I also found that the comments to his employer that he could not perform the work, that if he continued to do the work, that he would hurt his back, that the employer's failure to inquire what that meant was just something kind of *945 curious. There was more to that event than apparently came out.
(Emphasis added.)
In Perilloux v. Brown & Root, Inc., 96-321 (La.App. 5 Cir. 10/1/96); 692 So.2d 1100, a pipe fitter was assigned to a different position that required lifting up to sixty pounds. While performing this new job, he began to experience back pain that progressively worsened for three weeks until he could no longer work. The appellate court held that the claimant sustained an "accident," where he described to his doctor his work activities at the time his pain developed and the doctor opined that his back strain was "secondary to repetitive trauma on the job." Id. at p. 4; 692 So.2d at 1102.
Upon review of the record, we find no manifest error in the workers' compensation judge's finding that Smith sustained an accident. Although Smith did not identify a particular incident that produced his back pain, he reported to Dr. Dewey the date that his pain began and he described in detail his work activities on that day to Dr. Montgomery. Significantly, Smith reported these events to his doctors before his termination and before he realized the matter would be disputed. The workers' compensation judge's reasons indicated that she favorably credited Smith's testimony, but that she viewed the supervisors' testimony with scepticism. Given the corroborating medical evidence, we find no error in this credibility determination.

Benefits
The workers' compensation judge awarded Smith SEBs at a zero earnings base, subject to a credit for any unemployment benefits that Smith may have received after his termination. Ventura Foods contends that this was error because Smith failed to prove that he was unable to work.
In Johnson v. Apeck Construction, Inc., 96-1283, p. 3 (La.App. 3 Cir. 3/5/97); 692 So.2d 476, 478-79 (emphasis added), this court explained the burden of proof for recovery of SEBs as follows:
La.R.S. 23:1221(3) provides that an injured employee is entitled to supplemental earnings benefits where he is unable to earn ninety percent of his pre-injury wages. As an initial matter, the claimant bears the burden of proving by a preponderance of the evidence that he is unable, because of injury, to earn ninety percent of his pre-injury wages. If the employee is able to meet his initial burden, then the burden shifts to the employer to prove the amount of wages the employee is able to earn. The employer may discharge that burden by proving that the employee is able to perform a job and that the job was either offered to the employee or available to the employee in his or the employer's community or reasonable geographic region.
We find no error in the finding that Smith proved his inability to earn ninety percent of his pre-injury wages and in the award of SEBs. Dr. Dewey permanently restricted Smith to twenty pounds maximum lifting as the result of his L5-S1 disc protrusion. Dr. Dewey specifically related the disc protrusion to Smith's work activities. (Smith was formerly able to lift up to sixty-five pounds, a restriction well within his packaging position at Ventura Foods.) Ventura Foods terminated Smith because it could not accommodate his physical limitations, and it failed to identify any jobs offered or available to Smith.
The workers' compensation judge also awarded Smith all medical expenses associated with his back injury and ordered that Smith be examined by his choice of neurosurgeon, Dr. Bertuccini. Ventura Foods argues that the medical expenses claimed by Smith were caused by his chronic back condition rather than a work-related injury. We disagree. The medical records show that Smith suffered several episodes of acute lumbar strain, which Smith related to his lifting activities at work, but that he recovered from these *946 incidents and returned to his job after taking medications and resting for a few days. We find the award of medical benefits proper under La.R.S. 23:1203(A) (requiring the employer to furnish all necessary medical care) and La.R.S. 23:1121(B) (giving the employee the right to select one treating physician in any field or specialty).

Penalties and Attorney Fees
La.R.S. 23:1201(F) authorizes an award of penalties and attorney fees if the employer or insurer fails to timely pay disability benefits and medical expenses as outlined in La.R.S. 23:1201(A) through (E). However, under La.R.S. 23:1201(F)(2) penalties and attorney fees shall not be awarded if the claim is reasonably controverted. "Whether a claim is reasonably controverted turns on whether the employer or insurer had sufficient factual information to reasonably counter the factual information presented by the claimant." Granger v. Nelson Logging, 96-223, p. 7 (La.App. 3 Cir. 12/4/96); 685 So.2d 400, 403. A workers' compensation judge is given great discretion in awarding penalties and attorney fees, and the decision will not be disturbed in absence of manifest error. Meche v. Foremost Management Corp., 95-238 (La. App. 3 Cir. 10/4/95); 663 So.2d 325.
Ventura Foods contends that it reasonably controverted this claim because it relied upon information indicating that Smith's injury was not work-related, in particular Dr. Montgomery's diagnosis of prostatitis and the fact that Dr. Dewey's office filed for reimbursement with the company's health insurer rather than its worker's compensation carrier.[1] The workers' compensation judge stated that the employer acted reasonablybut only through the mediation conference, at which time the employer should have considered additional documentation that became available. The workers' compensation judge then imposed a $2,000 penalty and $3,000 in attorney fees. We find no error in the finding that Ventura Foods failed to reasonably controvert Smith's claim.
Fontenot testified that, as human resources administrator, it was her job to investigate the company's workers' compensation claims. She admitted that she usually requests all medical reports in a compensation claim, but that she did not request Dr. Montgomery's or Dr. Dewey's records because Smith had not filed an accident report before he was terminated and Dr. Montgomery's nurses indicated that the claim was not work-related. Had she requested those records, she would have received documentation corroborating Smith's claim that his pain began on November 13, 1997 while he was working on the production line. The record unquestionably supports Fontenot's testimony that she was not aware of an accident before the termination meeting, but this delay should not excuse her failure to investigate once she learned of the claim. As stated in Sterling v. Orleans Parish School Board, 96-107, p. 11 (La.App. 4 Cir. 6/26/96); 679 So.2d 167, 174: "An employer cannot choose to remain in deliberate ignorance of facts that would justify a claim by failing to investigate the claim and then rely on that ignorance as justification for a good faith refusal to pay claims."
Smith has answered the appeal, seeking an additional penalty of $2,000, an increase in attorney fees awarded at trial, and additional attorney fees for work performed on appeal. We first note that Smith has failed to brief his claim for an increase in trial fees; therefore, under Uniform RulesCourts of Appeal, Rule 2-12.4, *947 this assignment is considered abandoned.
Smith argues that he is entitled to two separate penalties of $2,000 for the failure to pay indemnity benefits and the failure to pay medical expenses. Based on our opinion, on rehearing, in Batiste v. Capitol Home Health, 96-799 (La.App. 3 Cir. 5/7/97); 699 So.2d 395, we agree and will amend the judgment accordingly. We further award an additional $1,500 for work performed in defending Ventura Foods' unsuccessful appeal.

Decree
For the above reasons, the judgment of the Office of Workers' Compensation is amended to award an additional penalty of $2,000 and additional attorney fees of $1,500. In all other respects, the judgment is affirmed. Costs of this appeal are assessed to appellant, Ventura Foods.
AFFIRMED AS AMENDED.
AMY, J., concurs in part and dissents in part and assigns reasons.
AMY, J., concurring in part and dissenting in part.
While I agree with the majority's conclusion that the trial court did not err in finding that Smith established his entitlement to SEBs, my agreement is based upon Smith's testimony concerning his search for other employment and his lack of success in that regard. In my view, the pertinent inquiry under La.R.S. 23:1221(3)(a)[1] is whether Smith has proven that he is unable "to earn ninety percent of his pre-injury wages at any job which he is able to perform." Joffrion v. Bryant, 98-1439 (La.App. 3 Cir. 4/14/99); 732 So.2d 767. Pursuant to that standard, Smith's testimony regarding his inability to locate another job because of his workplace injury supports the worker's compensation judge's determination that Smith is entitled to SEBs.
However, I respectfully dissent from the majority's award of a double penalty due to Ventura Foods' failure to pay medical and indemnity benefits. The provision of law relied upon by the majority as a basis for the double penalty is La.R.S. 23:1201(F), which provides, in pertinent part, as follows:
Failure to provide payment in accordance with this Section shall result in the assessment of a penalty in an amount equal to twelve percent of any unpaid compensation or medical benefits or fifty dollars per calendar day, whichever is greater, for each day in which any and all compensation or medical benefits remain unpaid, together with reasonable attorney fees for each disputed claim; however, the fifty dollars per calendar day penalty shall not exceed a maximum of two thousand dollars in the aggregate for any claim.
In my view, La.R.S. 23:1201(F) is a penal statute and must, therefore, be strictly construed. Pursuant to such construction, the statutory language limits the available penalty to $2,000.00 "in the aggregate." See LeJeune v. Trend Services, Inc., 96-550 (La.App. 3 Cir. 6/4/97); 699 So.2d 95 (Amy, J., dissenting). Accordingly, I would hold that Smith has received the maximum penalty to which he is entitled *948 by statute and respectfully dissent from the award of an additional $2,000.00 on appeal.
NOTES
[1] In Eglin v. United Gas Pipeline, 93-1179 (La.App. 3 Cir. 4/6/94); 635 So.2d 599, we held that the employee's filing with his health insurer rather than the compensation carrier was not dispositive, where the employee had never filed a compensation claim in his eighteen years with his employer. In the present case, we find no evidence that Smith had filed a claim for workers' compensation disability benefits in his ten years with Ventura Foods.
[1] La.R.S. 23:1221(3)(a) provides as follows regarding entitlement to SEBs:

For injury resulting in the employee's inability to earn wages equal to ninety per cent or more of wages at time of injury, supplemental earnings benefits equal to sixty-six and two-thirds percent of the difference between the average monthly wages at time of injury and average monthly wages earned or average monthly wages the employee is able to earn in any month thereafter in any employment or self-employment, whether or not the same or a similar occupation as that in which the employee was customarily engaged when injured and whether or not an occupation for which the employee at the time of injury was particularly fitted by reason of education, training, and experience, such comparison to be made on a monthly basis.
(Emphasis added).