# STATE OF LOUISIANA
## COURT OF APPEAL, THIRD CIRCUIT

### 03-1003


**TERRELL G. ISTRE**

**VERSUS**

**INTERNATIONAL MAINTENANCE COMPANY, L.L.C.**


************

APPEAL FROM THE
OFFICE OF WORKERS' COMPENSATION - DISTRICT 3,
PARISH OF CALCASIEU, NO. 00-5898,
SAM LOWERY, WORKERS' COMPENSATION JUDGE

************

## MICHAEL G. SULLIVAN
## JUDGE

************

Court composed of Ulysses Gene Thibodeaux, Chief Judge, Marc T. Amy, and Michael G. Sullivan, Judges.


**AFFIRMED AS AMENDED.**

Robert T. Jacques, Jr.
Attorney at Law
1011 Lakeshore Drive, Suite 310
Lake Charles, Louisiana  70601
(337) 433-4674
Counsel for Plaintiff/Appellee:
       Terrell G. Istre

Gregory E. Bodin
Taylor, Porter, Brooks, & Phillips, L.L.P.
Post Office Box 2471
Baton Rouge, Louisiana  70821
(225) 387-3221
Counsel for Defendant/Appellant:
       International Maintenance Company, L.L.C.

SULLIVAN, Judge.

International Maintenance Company (IMC) appeals a workers' compensation judgment awarding Terrell Istre temporary total disability benefits, medical expenses and treatment, mileage expenses, $2,000.00 in penalties, and $9,000.00 in attorney fees. Finding no error, we affirm and amend to award Mr. Istre additional attorney fees of $1,500.00 for defending this appeal.

**Discussion of the Record**

On July 24, 2000, Mr. Istre filed a disputed claim for compensation, alleging that he injured his back on June 1, 2000, as he stretched from a scaffold to make a weld on a tank wall. IMC denied the claim, contending that Mr. Istre injured himself while operating a weed-eater at his home during the weekend before the alleged accident. After a trial on April 9, 2001, Workers' Compensation Judge Constance Abraham-Handy ruled in Mr. Istre's favor, awarding him temporary total disability benefits, continued medical treatment, mileage expenses, penalties of $1,500.00, and attorney fees of $8,500.00. IMC appealed, but this court remanded for a new trial when the transcript could not be completed due to the untimely deaths of both the workers' compensation judge and the court reporter. *Istre v. Turner Indus.*, 02-1253 (La.App. 3 Cir. 11/25/02). On January 31, 2003, a second trial was held before Workers' Compensation Judge Sam Lowery, who also ruled in Mr. Istre's favor. That judgment, signed on April 7, 2003, is the subject of this appeal.

At the second trial, Mr. Istre, a welder who had been with IMC for eight to ten years, testified that, on Wednesday, May 31, 2000, he worked all day pounding the floor of a tank with an eighteen-pound maul hammer. When he reported to work the next day, on Thursday, June 1, 2000, he was assigned to "clean up" the tank wall, a task that required him to grind and re-weld the wall from a scaffold. He explained that, after working for about three hours, a "big shock caught [his] back and shot

through his leg," producing severe pain and numbness as he reached to make a weld from the scaffold. He stated that he was able to climb down from the scaffold, which was about ten feet high, but that he had to ask his co-workers to get his gear down. He also stated that he was limping "real bad" when he told the foreman, Les Coleman, that he had to leave work because he was in pain. He testified that Mr. Coleman asked him if he wanted to file an accident report, but when he declined to do so, Mr. Coleman brought him to punch out. Mr. Istre stated that he was not asked to make a statement at that time and that he did not want to report a work-related accident because he believed that he was not seriously injured and that he would be back on the job on Monday.

The foreman, Mr. Coleman, testified that he saw Mr. Istre limping from the job site, but he admitted that he did not specifically ask Mr. Istre if he had been injured at work. According to Mr. Colemen, Mr. Istre mentioned "something about he had been weed eating" and said he aggravated his back and wanted to go home. When Mr. Coleman told him that he should report to "safety," Mr. Istre replied that he would rather not go there and that he would be all right in a couple of days. Mr. Coleman acknowledged that Mr. Istre was not limping that morning, testifying that he would not have assigned Mr. Istre to the scaffolding job if he were. Mr. Coleman also testified that he should have insisted that Mr. Istre report to "safety," even though he did not want to go there.

Jack LaLanne, a welding supervisor, testified that, when Mr. Istre returned to work after the Memorial Day weekend, he said that he developed a "kink" after pulling something while weed-eating. As a result of this conversation, Mr. LaLanne suggested that Mr. Istre work on the floor of the tank that day. When Mr. LaLanne saw Mr. Istre on the morning of the alleged accident, Mr. LaLanne did not notice that

he was limping. According to Mr. LaLanne, Mr. Istre told him that morning that he was feeling bad and would probably see his chiropractor.

Mr. Istre testified that, after leaving the job site, his pain became so severe that he called his wife to take him to the emergency room at about 12:30 p.m. that day. West Calcasieu Cameron Hospital (Cal-Cam) records indicate that Mr. Istre "reports injured lifting at work this a[.]m[.]," but elsewhere, the records indicate that back pain started "last night" "possibly" due to a "recent injury" of "lifting." He was given Demerol and released with instructions to follow up with his family physician, Dr. Jose Gonzales. When an MRI ordered by Dr. Gonzales on June 10, 2000 revealed protrusions at L4-5 and L5-S1, Mr. Istre was referred to Dr. Clark Gunderson, an orthopedic surgeon.

Mr. Istre first saw Dr. Gunderson on June 13, 2000, complaining of pain, numbness in the leg, muscle spasm, joint stiffness, and muscle weakness. Dr. Gunderson's records indicate that Mr. Istre reported the onset of low back pain twelve days earlier while using a sledgehammer at work. The records also describe how Mr. Istre "crawled to [his] jeep" as he left work due to pain and numbness. By June 23, 2000, Mr. Istre reported to Dr. Gunderson that his left ankle was so weak he could not control it. A myelogram of July 13, 2000 revealed anterior extradural defects at L4-5 and L5-S1, with decreased filling of the L5 and S1 nerve roots bilaterally. On July 17, 2000, Mr. Istre underwent a two-level lumbar laminectomy and discectomy in which Dr. Gunderson removed an extruded disc fragment that compromised the L4 nerve root. Because Mr. Istre suffered a recurrent herniated disc at L4-5, he underwent a repeat laminectomy and fusion with pedicle screws from L4 through S1 on December 18, 2000. A third surgical procedure, a decompressive

3

laminectomy at L3-4 with removal of pedicle screws, was performed on December 10, 2001.

Mr. Istre admitted that he did not initially want to report a work-related accident because he feared for his job and because he did not believe he was seriously hurt. He testified, that after seeing Dr. Gunderson, he reported the accident to Jody Sullivan, a quality control supervisor at IMC, and to another IMC employee, Glenn Fisher. Mr. Istre also gave a written statement on June 26, 2000, in which he reported developing back pain, with numbness and shooting pain in his left leg, as he was welding on a scaffold on June 1, 2000. In describing the incident, he noted that he was pushing the scaffold in position while leaning to make welds. He also wrote in the statement that his co-workers saw him limping, that he told his foreman he wanted to go home because the pain was so bad, and that he had to call his wife one hour later to bring him to the hospital because of pain and numbness in his leg. Mr. Coleman and Mr. LaLanne also testified that they gave written statements to their "safety" division, but those statements were not introduced at trial.

In ruling in favor of Mr. Istre, the workers' compensation judge stated that his decision was based "totally, solely, and completely on the court's perception of the voracity [sic] of the live testimony and the review of all the medical evidence."

### Work-Related Accident and Causation

In its first assignment of error, IMC argues that the workers' compensation judge erred in finding that Mr. Istre sustained a work-related accident, given the inconsistencies in the medical records, the delay in reporting the unwitnessed accident, and the testimony of others that the claimant stated that he was injured at home. IMC also questions the workers' compensation judge's finding of causation, pointing out

4

that no where in his medical records did Dr. Gunderson relate Mr. Istre's need for surgery to the alleged accident at work.

In *Banks v. Industrial Roofing & Sheet Metal Works, Inc.*, 96-2840, pp. 7-8 (La. 7/1/97), 696 So.2d 551, 556 (citations omitted) (alteration in original), the supreme court set forth the standard of review in workers' compensation cases as follows:

> Factual findings in workers' compensation cases are subject to the manifest error or clearly wrong standard of appellate review. In applying the manifest error-clearly wrong standard, the appellate court must determine not whether the trier of fact was right or wrong, but whether the factfinder's conclusion was a reasonable one. Where there are two permissible views of the evidence, a factfinder's choice between them can never be manifestly erroneous or clearly wrong. Thus, "if the [factfinder's] findings are reasonable in light of the record reviewed in its entirety, the court of appeal may not reverse, even if convinced that had it been sitting as the trier of fact, it would have weighed the evidence differently."

To recover workers' compensation benefits, a claimant must establish a "personal injury by accident arising out of and in the course of his employment." La.R.S. 23:1031(A). An "accident" is defined in La.R.S. 23:1021(1) as "an unexpected or unforseen actual, identifiable, precipitous event happening suddenly or violently, with or without human fault, and directly producing at the time objective findings of an injury which is more than simply a gradual deterioration or progressive degeneration." In *Bruno v. Harbert International, Inc.*, 593 So.2d 357, 361 (La.1992) (citations omitted), the supreme court explained the claimant's burden of establishing an accident as follows:

> [T]he plaintiff-worker in a compensation action has the burden of establishing a work-related accident by a preponderance of the evidence. A worker's testimony alone may be sufficient to discharge this burden of proof, provided two elements are satisfied: (1) no other evidence discredits or casts serious doubt upon the worker's version of the incident; and (2) the worker's testimony is corroborated by the circumstances following the alleged incident. Corroboration of the worker's testimony may be provided by the testimony of fellow workers, spouses or friends. Corroboration may also be provided by medical evidence.

5

Additionally, in *Bryan v. Allstate Timber Co.*, 98-840, pp. 3-4 (La.App. 3 Cir. 12/16/98), 724 So.2d 853, 855, this court recognized: "When there is proof of an accident and attendant disability, without an intervening cause, it is presumed that the accident caused the disability."

In the present case, the claimant's testimony is corroborated by the circumstances immediately following the alleged accident, by lay testimony, and by medical records. It is undisputed that Mr. Istre left the job site with a limp on June 1, 2000, after he had worked approximately three hours on a scaffold. It is also undisputed that his foreman, Mr. Coleman, did not ask Mr. Istre if he had been injured on the job, even though Mr. Coleman witnessed Mr. Istre limping after he had appeared fit for work that morning. Mr. Istre's wife, Faye, testified that her husband was in good shape when he left for work that morning, with no back or foot problems, but that he called her later that day because of a back injury; she also stated that he has not been back to work since that time. When Mr. Istre went to the emergency room approximately two hours after leaving the job site, he reported that he was injured while lifting at work that morning. Significantly, Mr. Istre related his injury to his work that day, even though he did not want to report a work-related accident at that time.

Mr. Istre also reported to Dr. Gunderson that he was injured at work. When asked why Dr. Gunderson's records only mention his working with a sledgehammer, which had occurred the day before the alleged accident, Mr. Istre explained that he told Dr. Gunderson about working with the sledgehammer as well as about making welds on the wall from the scaffold and that he did not know what Dr. Gunderson had written down. Although Dr. Gunderson's records do not mention the scaffolding job,

6

they do reference other events that occurred on June 1, 2000, including Mr. Istre having to leave early that day and having to crawl to his jeep because of the pain.

IMC relies on the testimony of Mr. Coleman and Mr. LaLanne that Mr. Istre reported he had been injured at home while weed-eating as discrediting his claim of a work-related accident. The weed-eating incident, however, is mentioned only in the testimony of these witnesses. Even though Mr. Istre did not intend to report a work-related accident to his employer, he described being injured at work to both the emergency room physician and Dr. Gunderson. The medical records do not contain any references to an off-the-job injury. Additionally, Mr. Coleman's testimony that Mr. Istre said "he would be alright in a couple of days" as he left work corroborates Mr. Istre's testimony that he did not believe he was seriously injured at that time.

In *Douglas v. Grey Wolf Drilling Co.*, 03-515 (La.App. 3 Cir. 11/5/03), 858 So.2d 830, this court recently affirmed a judgment in favor of a claimant who had sustained an unwitnessed accident, notwithstanding inconsistencies in the medical records and testimony from two co-workers that the claimant had reported being injured at home to them. In *Douglas*, the workers' compensation judge stated that he found the claimant believable. In the present case, the workers' compensation judge also stated that its ruling was based upon its favorable assessment of the claimant's credibility. On the record before us, we find no basis to disturb the workers' compensation judge's findings of fact and subsequent award.

### Penalties and Attorney Fees

In its second assignment of error, IMC argues that the workers' compensation judge erred in imposing penalties and attorney fees and, alternatively, that the amount of attorney fees is excessive.

7

Under La.R.S. 23:1201(F), the employer is subject to penalties and attorney fees for the failure to pay benefits and expenses as outlined in La.R.S. 23:1201(A) through (E), unless the claim is reasonably controverted or the failure to pay results from circumstances beyond the employer's control. "Whether a claim is reasonably controverted turns on whether the employer or insurer had sufficient factual information to reasonably counter the factual information presented by the claimant." *Smith v. Ventura Foods*, 99-104, p. 9 (La.App. 3 Cir. 6/30/99), 742 So.2d 941, 946 (quoting *Granger v. Nelson Logging*, 96-223, p. 7 (La.App. 3 Cir. 12/4/96), 685 So.2d 400, 403). Whether an employer should be cast with penalties and attorney fees is a question of fact that will not be reversed on appeal in the absence of manifest error. *Id.*

Mr. Istre gave a written statement to his employer on June 26, 2000, relating his injury to his work duties of June 1, 2000. However, he testified that he verbally reported the accident to a supervisor in the company, Mr. Sullivan, before that date. Additionally, Mr. Istre was observed limping from the job site on June 1, 2000 by his foreman, who admittedly did not inquire whether his condition was the result of a work-related accident. Although the adjuster's file was not introduced into evidence, the record reflects that an adjuster did request medical records from each health care provider. As explained above, the records of Dr. Gunderson and Cal-Cam hospital indicate that Mr. Istre related his injuries to his job duties, even at a time when he did not contemplate filing a workers' compensation claim. To counter Mr. Istre's evidence, IMC relied upon the testimony of Mr. Coleman and Mr. LaLanne, who stated that Mr. Istre told them he was injured while weed-eating at home. Both of these witnesses testified that they gave written statements to the company's "safety" department on the same date of Mr. Istre's statement, but those documents were not

8

introduced into evidence. On the record before us, we find no error in the workers' compensation judge's conclusion that IMC failed to reasonably controvert this claim.

"As long as an award for attorney fees is supported by the record, the amount of the award is within the discretion of the [workers' compensation judge]." *Burns v. St. Frances Cabrini Hosp.*, 02-518, p. 5 (La.App. 3 Cir. 10/30/02), 830 So.2d 572, 576 (citing *McCarroll v. Airport Shuttle, Inc.*, 00-1123 (La. 11/28/00), 773 So.2d 694). "Some of the factors taken into account by the judge in fixing the amount of the fee are the degree of skill and ability exercised by the attorney, the amount of the claim, the amount recovered for the employee, and the amount of time the attorney devoted to the case." *Ardoin v. Kipling Korner Grocery*, 02-1372, pp. 2-3 (La.App. 3 Cir. 3/5/03), 839 So.2d 1167, 1168-69 (quoting *McCarroll*, 773 So.2d at 700). In the present case, the claimant's attorney recovered a substantial judgment for his client, after prevailing in two trials. Although the amount of past due benefits was based, in part, upon the delay of a second trial, we note that the amount of attorney fees awarded by the second workers' compensation judge differed little from that of the first. We decline to disturb the amount of attorney fees awarded in this case.

## Answer to Appeal

Mr. Istre has answered IMC's appeal, seeking an increase in the amount of attorney fees for defending this appeal. We grant this request and award additional attorney fees of $1,500.00.

## Decree

For the above reasons, the judgment of the Office of Workers' Compensation is affirmed and amended to award the claimant, Terrell Istre, additional attorney fees of $1,500.00 for work performed on appeal. Costs of this appeal are assessed to Defendant-Appellant, International Maintenance Company.

**AFFIRMED AS AMENDED.**