699 So.2d 95 (1997)
Ernie LeJEUNE, PlaintiffAppellant,
v.
TREND SERVICES, INC., et al., DefendantsAppellees.
No. 96-550.
Court of Appeal of Louisiana, Third Circuit.
June 4, 1997.
Order Granting Rehearing September 30, 1997.
*97 Michael Benny Miller, Crowley, for Ernie LeJeune.
David Keith Johnson, Baton Rouge, for Trend Services, Inc.
Before WOODARD, DECUIR, PETERS, AMY and GREMILLION, JJ.
PETERS, Judge.
Ernie LeJeune brought this action to recover certain benefits pursuant to the Louisiana Workers' Compensation Act. Named as defendants were his employer, Trend Services, Inc., and its compensation insurer, Louisiana Workers' Compensation Corporation (LWCC). At trial, LeJeune sought authorization of physical therapy treatments recommended by one of the treating physicians as well as statutory penalties and attorney fees for the insurer's failure to authorize the physical therapy; for its failure to timely authorize an MRI and surgery for carpal tunnel syndrome as recommended by one of the treating physicians; for its failure to timely pay compensation benefits and medical expenses; and for its policy of requiring insurance reimbursement for the cost of generic drugs only, unless otherwise directed by the physician writing the prescription.
After trial, the hearing officer issued written reasons for judgment wherein she concluded that the requested physical therapy, MRI, and carpal tunnel surgery were all reasonable and necessary medical treatments or procedures which should have been timely approved by LWCC. She further found that LWCC was arbitrary and capricious in failing to timely authorize these treatments or procedures and in failing to timely pay certain medical costs. Based on these findings, she awarded LeJeune statutory penalties not to exceed $2,000.00 and attorney fees of $2,500.00.
Although the hearing officer concluded that every weekly payment was mailed the day after the due date, her reasons for judgment are silent as to any award for this action on the part of the insurer. She also found no statutory violation for the insurer's requirement that LeJeune use only generic drugs. LeJeune has appealed, asserting six assignments of error.

DISCUSSION OF THE RECORD
At trial, it was stipulated that on April 13, 1993, Ernie LeJeune sustained back and neck injuries as a result of an accident which occurred while he was in the course and scope of his employment with Trend Services, Inc. It was further stipulated that LeJeune was entitled to temporary total benefits and that he had been paid such benefits at the rate of $307.00 per week since the accident but that each weekly payment was mailed one day late.
LeJeune was seen by Dr. Michael Heard, an orthopedic surgeon, who concluded that LeJeune had suffered a soft tissue injury and recommended surgery for carpal tunnel syndrome. The recommendation was made in March, 1994. The insurer obtained a second opinion from Dr. Louis Blanda, also an orthopedic surgeon. Dr. Blanda concurred in the need for surgery, but the surgery was not approved by the insurer until November, 1994, or almost eight months after the initial recommendation.
In February, 1995, Dr. Heard recommended that an MRI be performed on LeJeune. The insurer submitted the recommendation to a utilization review company, which concluded that the MRI was not necessary. The insurer again consulted with Dr. Blanda, who concurred in the need for the *98 MRI. Still, the insurer did not approve the MRI until late June or early July, 1995.
Dr. Heard had also recommended on April 13, 1995, that LeJeune take physical therapy treatments, but after submitting that recommendation to utilization review, it was also denied. These treatments had not been approved at the time of trial.
The trial before the hearing officer was held on October 19, 1995, and judgment was rendered with written reasons on March 15, 1996. LeJeune has appealed this judgment, seeking additional relief. Specifically, LeJeune contends that the hearing officer erred in failing to:
1. find that LeJeune was entitled to weekly compensation benefits;
2. find that the insurer did not pay weekly compensation benefits timely;
3. find that the insurer withheld medical treatment by refusing to allow LeJeune to fill his prescriptions as written;
4. find that the insurer did not pay Dr. Heard's medical charges timely;
5. assess the exact amount of penalties due LeJeune.
6. award reasonable attorney fees.

OPINION
The factual findings of a hearing officer in a workers' compensation case are subject to the manifest error standard of review, and where there is a conflict in the testimony, reasonable inferences of fact should not be disturbed on review. Joiner v. Newberg Venture, 94-1533 (La.App. 3 Cir. 5/3/95); 657 So.2d 206. Furthermore, absent manifest error, the hearing officer's determination concerning an award of penalties and attorney fees will not be disturbed on appeal. Miles v. F.D. Shay Contractor, Inc., 626 So.2d 74 (La.App. 3 Cir.1993).
In his first assignment of error, LeJeune contends that the hearing officer erred in failing to find that he was entitled to weekly compensation benefits. Although the judgment is silent as to LeJeune's right to be paid weekly benefits, it was stipulated at trial that he was injured and entitled to temporary total disability benefits at the rate of $307.00 per week and that the insurer continues to pay these benefits on a weekly basis. Because there is no dispute concerning the payment of benefits, the hearing officer did not err in failing to include this finding in her reasons for judgment.
LeJeune's second assignment of error, i.e., that the hearing officer erred in not finding that the defendant failed to pay weekly workers' compensation benefits timely, was withdrawn at oral argument. Therefore, we will consider it abandoned.
The third assignment of error deals with the insurer's refusal to allow LeJeune to fill his prescriptions as written. The insurer has a "managed prescription drug program" which pays only the cost of a less expensive generic drug when such is available, despite what the prescription calls for. If the employee chooses the more expensive brandname drug, he must pay the difference in price. However, the program does not apply to medications prescribed with a physician's designation "Dispense as Written." Moreover, should the patient or pharmacist believe that the brand-name drag is required, the patient or pharmacist may contact the prescribing physician and request that the prescription be revised as a "Dispense as Written" prescription. LeJeune argues that there is no statutory authority or jurisprudence that allows the insurer to substitute generic drugs for brand-name drugs without the employee's consent and that such a substitution constitutes withholding of medical treatment.
The problem with the insurer's program is that it presumes that the doctor, patient, and pharmacist are well-informed about their choices and that they are well-informed about the insurer's willingness to pay for brand-name drugs under the appropriate circumstances. Additionally, the program places the duty on either the doctor, the pharmacist, or the patient, or all three, to adhere to the internal policy, for which there is no legal authority and which was created solely to serve the best interests of the insurernot the employee. We find that such a program may very well constitute withholding of medical treatment upon a showing of a difference between the benefits of a generic *99 drug versus a brand-name drug. However, in this case, no evidence was produced to show that the substitution affected or would affect LeJeune's treatment in any way or that the generic drug and the brand-name drug are in any way different. Without such evidence, we cannot say that the hearing officer's determination on this matter was manifestly erroneous. Therefore, we find this assignment of error to be without merit.
In the fourth assignment of error, LeJeune asserts that the hearing officer erred in not finding that the insurer failed to timely pay for medical treatment rendered by Dr. Heard. However, the reasons for judgment clearly state that LWCC failed to pay Dr. Heard's charges timely. This finding was a specific part of the hearing officer's conclusion that the insurer's actions were sufficiently arbitrary and capricious to warrant the imposition of penalties. Therefore, LeJeune's fourth assignment of error is without merit.
In his fifth assignment of error, LeJeune argues that the hearing officer erred in failing to assess the exact amount of penalties due and in failing to assess a $2,000.00 penalty for each of his claims. In awarding penalties, the hearing officer used the following language:
The court therefore awards penalties of 12% or $50 per day up to $2000, whichever is greater, on the MRI, physical therapy, carpal tunnel surgery, and overdue medical bills of Dr. Heard.
While the hearing officer did not designate the specific amount of the penalty, all of the acts for which she found the insurer to be arbitrary and capricious exceeded forty days, and therefore, the appropriate penalty would be the maximum of $2,000.00. The question before this court is whether the $2,000.00 penalty should be assessed for each act found to be arbitrary and capricious or whether a single $2,000.00 penalty should be assessed for all of the acts combined. LeJeune asserts that a $2,000.00 penalty should be assessed for each act and that therefore he is entitled to a total of $8,000.00 in penalties for the four separate arbitrary and capricious acts of the insurer.
In arguing for the multiple penalties, LeJeune relies on La.R.S. 23:1201(E) and (F), which read as follows:
E. Medical benefits payable under this Chapter shall be paid within sixty days after the employer or insurer receives written notice thereof.
F. Failure to provide payment in accordance with this Section shall result in the assessment of a penalty in an amount equal to twelve percent of any unpaid compensation or medical benefits or fifty dollars per calendar day, whichever is greater, for each day in which any and all compensation or medical benefits remain unpaid, together with reasonable attorney fees for each disputed claim; however, the fifty dollars per calendar day penalty shall not exceed a maximum of two thousand dollars in the aggregate for any claim. Penalties shall be assessed in the following manner:
(1) Such penalty and attorney fees shall be assessed against either the employer or the insurer, depending upon fault. No workers' compensation insurance policy shall provide that these sums shall be paid by the insurer if the hearing officer determines that the penalty and attorney fees are to be paid by the employer rather than the insurer.
(2) This Subsection shall not apply if the claim is reasonably controverted or if such nonpayment results from conditions over which the employer or insurer had no control.
(3) Except as provided in Paragraph (4) of this Subsection, any additional compensation paid by the employer or insurer pursuant to this Section shall be paid directly to the employee.
(4) In the event that the health care provider prevails on a claim for payment of his fee, penalties as provided in this Section and reasonable attorney fees based upon actual hours worked may be awarded and paid directly to the health care provider. This Subsection shall not be construed to provide for recovery of more than one penalty or attorney fee.

*100 (5) No amount paid as a penalty or attorney fee under this Subsection shall be included in any formula utilized to establish premium rates for workers' compensation insurance.
(Emphasis added).
However, the penalty provisions of La.R.S. 23:1201 have been amended twice in the last five years, and the language relied on by LeJeune was added by Acts 1995, No. 1137, § 1, effective June 29, 1995. In evaluating this issue, a review of the recent legislative history is necessary.
Prior to January 1, 1993, La.R.S. 23:1201 did not mention a penalty for the non-payment of medical benefits. Section 1201(B) simply provided that the first installment of compensation was to be due on the fourteenth day after the employer or insurer had knowledge of the injury. The penalty provision was in Section 1201(E) and provided for a twelve percent penalty if an installment of compensation was not paid within the proper time period. This circuit in Broussard v. West-Cal Construction Co., 96-18 (La.App. 3 Cir. 6/12/96); 676 So.2d 743, held that there was no authority for awarding a penalty for failure to pay medical benefits to a claimant if the accident occurred prior to January 1, 1993. However, while not addressing the issue directly, other cases seemed to indicate that such relief was available.[1]
Acts 1992, No. 1003, § 1, effective January 1, 1993, changed La.R.S. 23:1201(E) to read in part as follows:
E. If, pursuant to this Chapter, any compensation or medical benefits payable without an order is not paid within the time period provided in Subsection B, C, or D of this Section, there shall be added to such unpaid compensation a penalty of an amount equal to twelve percent thereof or a total penalty of not more than fifty dollars per calendar day for each day in which any and all compensation or medical benefits remain unpaid, whichever is greater, which shall be paid at the same time as, and in addition to, such compensation, unless such nonpayment results from conditions over which the employer or insurer had no control.... The total fifty dollar per calendar day penalty provided for in this Subsection shall not exceed two thousand dollars in the aggregate.

(Emphasis added).
Thus, the failure to pay medical benefits was added as a penalty item. Additionally, the fifty-dollar-per-day penalty supplemented the previous twelve percent penalty, but to an aggregate of $2,000.00. The time limits set forth in La.R.S. 23:1201(B), (C), and (D) related to compensation payments and not medical payments. However, by the very language of the statute, these shortened time limits were applicable to medical-benefit issues.
Acts 1995, No. 1137, § 1, effective June 29, 1995, established a separate time period in which medical benefits were to be paid. It basically rewrote La.R.S. 23:1201(E) and redesignated that which had previously been in that subsection, with major modifications, as what is now La.R.S. 23:1201(F). Although the current statute still relates relief in terms of compensation and medical benefits, it now does so in terms of disputed claims. However, we need not determine what changes, if any, were intended by the 1995 amendment because the governing law in a workers' compensation action is that which was in effect at the time of the injury, Wiley v. Tullos Construction, 93-1412 (La. App. 3 Cir. 6/1/94); 640 So.2d 739. Therefore, we must look to the statute in effect on April 13, 1993, which is that which was created by the 1992 amendment.
As a penal statute, this section of the Workers' Compensation Act must be strictly construed. Ferrier v. Jordache-Ditto's, 94-1317, 94-1318 (La.App. 3 Cir. 5/17/95); 662 So.2d 14, writ denied, 95-2865 (La.2/2/96); 666 So.2d 1100. Even applying a strict construction, we conclude that Acts 1992, No. 1003, § 1, effective January 1, 1993, added a second penalty provision to *101 La.R.S. 23:1201. Had the legislature intended to limit the employee to one penalty, it need only have used the coordinating conjunction "and" between "compensation" and "medical benefits" instead of "or" in La.R.S. 23:1201(E).
However, we do not find that the 1993 version of La.R.S. 23:1201 provides a penalty for each claim of unpaid medical benefits as argued by LeJeune. Instead, we conclude that an employee is entitled to one maximum penalty of $2,000.00 for failure to timely pay any and all compensation benefits and one maximum penalty of $2,000.00 for failure to timely pay any and all medical benefits. We therefore do not find it necessary to interpret the effect of the changes to La.R.S. 23:1201 by the amendments in 1995 and leave that issue for another day. Having interpreted the hearing officer's reasons for judgment to be an award of $2,000.00 for statutory penalties, we find no merit in LeJeune's fifth assignment of error.
In LeJeune's final assignment of error, he seeks an increase in the hearing officer's award of $2,500.00 in attorney fees. LeJeune presented evidence at the trial before the hearing officer that his attorney had devoted a total of seventy-one hours to the litigation and that the attorney's typical hourly rate is $125.00. The factors to be considered in making an attorney fee award in a workers' compensation case include the degree of skill and ability exercised, the amount of the claim, the amount recovered, and the time devoted to the case. Hood v. C.J. Rogers, Inc., 94-1162 (La.App. 3 Cir. 3/8/95); 654 So.2d 371. While the amount of the award is within the hearing officer's vast discretion, such awards are, nonetheless, to be construed in relation to the intent and purpose of the Workers' Compensation Act as a whole. At the time of the injury, La. R.S. 23:1201.2 authorizes the award of "all reasonable attorney's fees."
In this case, the award amounts to approximately $35.00 per hour for the time expended, or twenty-eight percent of the attorney's normal hourly rate. While the claim did not involve large sums of money, it involved something more valuablethe recovery of needed medical treatment. Given the disturbing, continuous failure of the insurer to meet its obligation to provide medical benefits, the importance of such benefits, and the time involved, we find that the hearing officer's award of $2,500.00 in attorney fees is inadequate and increase that award to $7,500.00.

DISPOSITION
For the foregoing reasons, the judgment of the hearing officer is amended to increase the attorney fee award from $2,500.00 to $7,500.00. The judgment is affirmed in all other respects. Costs of this appeal are assessed against the defendants.
AFFIRMED AS AMENDED.
DECUIR, J., concurs in the result.
WOODARD and AMY, JJ., dissent with written reasons.
WOODARD, Judge, dissenting.
Respectfully, I dissent.
I am particularly concerned about the majority's interpretation of the penalty provisions of La.R.S. 23:1201. The most serious problem with it is that once an employer/insurance company has committed enough violations to exhaust the $2,000.00 penalty limit, regarding either compensation or medical benefits, as in the instant case, the employee, for as long as he or she lives, has no protection against future infractions of arbitrary and capricious behavior. For an insurance company who is determined to disregard the law in this fashion, this penalty limit can be satisfied very quickly for someone who has been awarded TTD. Then, there is no incentive for that particular insurance company to act responsibly in the future. It is difficult to conceive that this was the intent of the legislature. And, whose burden, is it to maintain a running tabulation of penalties paid and the balance available?
It is important to note that La.R.S. 23:1201 becomes actionable not for every failure to pay but for every arbitrary and capricious failure to pay that to which the claimant is entitled. I submit that it was the intent of the legislature that every arbitrary and *102 capricious infraction be subject to a penalty and that each violation has a cap of $2000.00.
AMY, Judge, dissenting.
I respectfully dissent. La.R.S. 23:1201(E) is penal in nature and, accordingly, must be strictly construed. See generally Broussard v. U.S. Fire Ins. Co., 96-668 (La.App. 3 Cir. 12/11/96); 685 So.2d 494; Comeaux v. Sam Broussard Trucking, 94-1631 (La.App. 3 Cir. 5/31/95); 657 So.2d 449. In my opinion, the 1993 version of La.R.S. 23:1201(E), which is applicable to this case, does not provide for $2,000.00 in penalties on medical expenses and an additional $2,000.00 in penalties on compensation. Such an interpretation would allow a penalty of $4,000.00 in the aggregate. However, the statute clearly states: "The total fifty dollar per calendar day penalty provided for in this Subsection shall not exceed two thousand dollars in the aggregate." Therefore, in my opinion and particularly in view of the requirement that a penal statute be strictly construed, interpreting the provision to allow an award of two penalties of $2,000.00 exceeds statutory authority.

ON REHEARING
PER CURIAM.
We grant a rehearing in this matter to reconsider this court's conclusion that the hearing officer did not err in failing to include a ruling on disability in her reasons for judgment. We find that, by the nature of her decision, the hearing officer implicitly ruled on the issue of disability but simply failed to include the ruling in her reasons for judgment.
The issues of disability and entitlement to compensation benefits were clearly before the court in the hearing. However, the parties initially stipulated that LeJeune was entitled to temporary total benefits at a rate of $307.00 per week and that the benefits were still being paid at that rate at the time of the hearing. With this stipulation, the hearing officer proceeded to decide the remaining issues of the reasonableness and necessity of medical treatment and of penalties and attorney fees. In order to reach those issues, the hearing officer had to accept the stipulation that the employee was entitled to temporary total benefits as a result of the accident.
We do not find, as argued by the employee, that the decision rendered herein constituted a piecemeal judgment. Rather, we conclude that the disability issue was ruled upon by virtue of the stipulation and simply inadvertently not included in the final judgment. Thus, we amend our judgment rendered on June 4, 1997, to include a judgment in favor of Ernie LeJeune on the issue of entitlement to temporary total disability benefits at the rate of $307.00 per week until further orders of the appropriate court of competent jurisdiction.
AFFIRMED AS AMENDED.
NOTES
[1] In Daugherty v. Domino's Pizza, 95-1394 (La.5/21/96); 674 So.2d 947, the supreme court awarded penalties for failure to timely pay an accident-related medical bill for an accident which occurred on November 21, 1988. In doing so, the supreme court relied on La.R.S. 23:1201 and LaHaye v. Westmoreland Casualty Co., 509 So.2d 748 (La.App. 3 Cir.1987).