780 So.2d 1197 (2001)
Michael J. FONTENOT
v.
REDDELL VIDRINE WATER DISTRICT, et al.
No. 00-762.
Court of Appeal of Louisiana, Third Circuit.
February 21, 2001.
Writ Granted May 11, 2001.
Michael Benny Miller, Miller & Miller, Crowley, LA, Counsel for Plaintiff/Appellee Michael J. Fontenot.
Sammie Maurice Henry, Egan, Johnson & Stiltner, Baton Rouge, LA, Counsel for Defendant/Appellants La. Workers' Compensation *1198 Corp., Reddell Vidrine Water District.
Court composed of DOUCET, Chief Judge, WOODARD, PETERS, SULLIVAN, and GREMILLION, Judges.
SULLIVAN, Judge.
Louisiana Workers' Compensation Corporation (LWCC) appeals a judgment awarding a total of $6,000.00 in statutory penalties to claimant, Michael J. Fontenot. Because we find the amount of the penalties exceeds that allowed by law, we amend the judgment as follows.

Facts
Mr. Fontenot was injured in the course and scope of his employment with the Reddell Vidrine Water District on October 7, 1997. The Water District's compensation insurer, LWCC, began paying Mr. Fontenot temporary total disability (TTD) benefits at a rate of $169.23 per week from October 24, 1997 through February 1, 1999, at which time LWCC began paying supplemental earnings benefits (SEB) of $97.56 per month. On March 16, 1999, Mr. Fontenot filed a disputed claim that alleged improper payment of compensation benefits and medical expenses. After a trial, the workers' compensation judge determined that LWCC (1) miscalculated Mr. Fontenot's initial TTD rate, (2) improperly reduced his TTD benefits to SEB, and (3) improperly refused to authorize emergency treatment for an aggravation of his work-related injury. The workers' compensation judge imposed a $2,000.00 penalty for each violation, for a total of $6,000.00 in penalties, and awarded $5,000.00 in attorney fees.
LWCC appeals, arguing that the workers' compensation judge erred in (1) awarding two penalties of $2,000.00 each for Mr. Fontenot's "claim for compensation" and (2) awarding a $2,000.00 penalty for the denial of treatment at a hospital emergency room.

Opinion
LWCC first argues that La.R.S. 23:1201, as interpreted in LeJeune v. Trend Services, Inc., 96-550 (La.App. 3 Cir. 6/4/97), 699 So.2d 95, permits only one penalty of $2,000.00 for both the initial miscalculation in benefits and for the reduction from TTD to SEB. Mr. Fontenot argues that LeJuene was decided under a prior version of the statute and that the current version does permit additional penalties.
In LeJeune, 699 So.2d at 101, we held that La.R.S. 23:1201(E), as amended on January 1, 1993 and effective through June 29, 1995, permitted "one maximum penalty of $2,000.00 for failure to timely pay any and all compensation benefits and one maximum penalty of $2,000.00 for failure to pay any and all medical benefits." In reaching this conclusion, we rejected the employee's argument that he was entitled to two penalties of $2,000.00 each for the failure to authorize physical therapy and for the failure to authorize surgery. The employee based that argument on the current version of the statute, but we found his claim to be governed by the 1993 version. That earlier version of La.R.S. 23:1201 provided in part:
E. If, pursuant to this Chapter, any compensation or medical benefits payable without an order is not paid within the time period provided in Subsection B, C, or D of this Section, there shall be added to such unpaid compensation a penalty of an amount equal to twelve percent thereof or a total penalty of not more than fifty dollars per calendar day for each day in which any and all compensation or medical benefits remain unpaid, whichever is greater, which shall be paid at the same time as, and in addition to, such compensation, unless such nonpayment results from conditions over which the employer or insurer had no control.... Whenever the employee's right to such compensation or medical benefits has been reasonably controverted by the employer or his insurer, the penalties set forth in this Subsection shall not apply.... The total fifty dollar per calendar day penalty provided for in this Subsection shall not *1199 exceed two thousand dollars in the aggregate.

(Emphasis added.)
Two judges dissented from the majority's interpretation in LeJeune. One judge would have imposed a $2,000.00 penalty for each sanctionable violation of the compensation act, whereas the other would have imposed only one $2,000.00 penalty, even if both compensation and benefits were not timely paid. This court, however, has continued to apply the majority holding of LeJeune. See Dubois v. Louisiana Forest Indus., Inc., 98-895 (La.App. 3 Cir. 12/9/98), 722 So.2d 409, writ denied, 99-0049 (La.2/26/99), 738 So.2d 586 (claimant was entitled to only one penalty of $2,000.00 for three medical claims violations) and Kendrick v. Bill Liberto Enters., 96-979 (La.App. 3 Cir. 6/18/97), 698 So.2d 22 (defendant required to pay separate penalties for failure to pay medical benefits and failure to timely pay compensation benefits).
Effective June 29, 1995, the penalty provision in La.R.S. 23:1201 now provides:
F. Failure to provide payment in accordance with this Section shall result in the assessment of a penalty in an amount equal to twelve percent of any unpaid compensation or medical benefits or fifty dollars per calendar day, whichever is greater, for each day in which any and all compensation or medical benefits remain unpaid, together with reasonable attorney fees for each disputed claim; however, the fifty dollars per calendar day penalty shall not exceed a maximum of two thousand dollars in the aggregate for any claim. Penalties shall be assessed in the following manner:
(1) Such penalty and attorney fees shall be assessed against either the employer or the insurer, depending upon fault. No workers' compensation insurance policy shall provide that these sums shall be paid by the insurer if the workers' compensation judge determines that the penalty and attorney fees are to be paid by the employer rather than the insurer.
(2) This Subsection shall not apply if the claim is reasonably controverted or if such nonpayment results from conditions over which the employer or insurer had no control.
(3) Except as provided in Paragraph (4) of this Subsection, any additional compensation paid by the employer or insurer pursuant to this Section shall be paid directly to the employee.
(4) In the event that the health care provider prevails on a claim for payment of his fee, penalties as provided in this Section and reasonable attorney fees based upon actual hours worked may be awarded and paid directly to the health care provider. This Subsection shall not be construed to provide for recovery of more than one penalty or attorney fee.
(5) No amount paid as a penalty or attorney fee under this Subsection shall be included in any formula utilized to establish premium rates for workers' compensation insurance.
(Emphasis added.)
Mr. Fontenot argues that the addition of the phrase "together with reasonable attorney fees for each disputed claim" in the first clause of paragraph (F) and of the words "any disputed claim" after the phrase "in the aggregate" in the second clause indicates the legislature's intent to permit a penalty of $2,000.00 for each sanctionable violation. He also points to dicta in McLaughlin v. Hill City Oil Co./Jubilee Exxon, 97-577 (La.App. 3 Cir. 10/8/97), 702 So.2d 786, writ denied, 97-2797 (La.2/13/98), 706 So.2d 994, in which another panel of this court suggested that a claimant would have been entitled to penalties greater than those allowed by LeJeune, 699 So.2d 95, had she raised that issue on appeal. For the following reasons, we disagree with his interpretation.
Before the 1993 amendments to La.R.S. 23:1201, the statute included only the twelve percent penalty. We believe that *1200 by adding the fifty dollar per day penalty in 1993, the legislature intended to benefit the employee whose twelve percent penalty claim yielded only a small penalty recovery. In 1995, the legislature again amended the statute, clarifying that separate penalties could be awarded for unpaid compensation benefits and unpaid medical expenses. Thus, whenever an employee raises a successful penalty claim, the penalty may equal twelve percent of the unpaid benefits, either compensation or medical or both, or fifty dollars per calendar day up to $2,000.00, whichever penalty is greater. Although the fifty dollar per day penalty is subject to the $2,000.00 cap, the twelve percent penalty is not. Because the $2,000.00 cap applies only to the fifty dollar per day penalty, the total penalty award can exceed $2,000.00 if twelve percent of any unpaid compensation or medical expenses is higher than that amount.
Viewing the fifty dollar per day penalty in context with the twelve percent penalty, we find that the statute contemplates that only one of the two penalties can be imposed. If the fifty dollar per day penalty is applicable, then it cannot exceed $2,000.00 in the aggregate for the employees's claim for unpaid compensation benefits and/or $2,000.00 in the aggregate for the employee's claim for unpaid medical benefits. Mr. Fontenot, however, would have us equate the word "claim" with "violation." As explained in Williams v. Rush Masonry, Inc., 98-2271, pp. 8-9 (La.6/29/99), 737 So.2d 41, 46 (citations omitted): "Awards of penalties and attorney's fees in workers' compensation are essentially penal in nature, being imposed to discourage indifference and undesirable conduct by employers and insurers. Although the Workers' Compensation Act is to be liberally construed in regard to benefits, penal statutes are to be strictly construed." We find that adopting Mr. Fontenot's position would be inconsistent with the principle that penal statutes are to be strictly construed. A reasonable interpretation of the 1995 amendment is that the legislature intended to clarify that the employee may receive separate penalties for both compensation and medical benefit "claims." Clearly, the position that only one penalty applies to both compensation and medical claims does not survive the 1995 amendment. However, we cannot conclude that the legislature intended to equate "claim" with "violation." We, therefore, find that only one penalty of either twelve percent of any unpaid compensation or fifty dollars per calendar day, not to exceed a maximum of $2,000.00, whichever is greater, applies to LWCC's miscalculation of benefits and to its improper reduction of benefits.
In his brief, Mr. Fontenot argues that the twelve percent penalty on any unpaid compensation exceeds $2,000.00 in this case. We disagree. The workers' compensation judge found that Mr. Fontenot should have been paid at a rate of $244.73 per week from the date of his accident, October 7, 1997, through the date of trial, October 20, 2000. Multiplying this rate by the 119 weeks between those dates, we find that Mr. Fontenot should have received a total of $29,122.87 in compensation benefits during that time. However, the record reveals that LWCC paid Mr. Fontenot only $13,358.89, for a difference of $15,763.98. Twelve percent of this difference is only $1,891.68. Because the twelve percent penalty is less than $2,000.00, Mr. Fontenot is entitled a penalty of fifty dollars per day, subject to a $2,000.00 cap.
In arguing that twelve percent penalty exceeds $2,000.00, Mr. Fontenot would have us calculate the penalty on the interest owed on the unpaid compensation and on several late payments. We find that including interest in the penalty calculation is prohibited by La.R.S. 23:1201(F) (emphasis added), which provides that the penalty shall be "an amount equal to twelve percent of any unpaid compensation or medical benefits." Concerning the late payments, we note that the trial court, in its oral reasons, specifically declined to penalize LWCC for these violations and *1201 that Mr. Fontenot has not appealed that determination. Accordingly, because the amount of the twelve percent penalty does not exceed $2,000.00, we find that Mr. Fontenot is entitled to one fifty dollar per day penalty, subject to the $2,000.00 cap, on his claim for unpaid compensation benefits.
LWCC next argues that the workers' compensation judge erred in penalizing it for refusing to authorize treatment for Mr. Fontenot in a hospital emergency room. LWCC contends it was justified in not approving the emergency room visit because Mr. Fontenot was being treated at that time by a physician of his own choosing.
Mr. Fontenot testified that in February of 1999 he felt his back pop and start burning as he turned while retrieving a gallon of milk from his refrigerator. He stated he was refused emergency room treatment because the compensation carrier would not authorize it. Because his treating physician, Dr. Stephen Nason, was in surgery, he was unable to immediately schedule a visit. He returned to Dr. Nason two days later with complaints of pain and spasm. Dr. Nason then treated him with an injection that gave him relief. Dr. Nason recorded the following for an office visit of February 24, 1999:
The patient is coming in because of an acute lower back pain that began two days ago when he picked up on a gallon of milk and felt a popping sensation in his back. He complains of a burning sensation there now and has difficulty moving around especially getting erect after sitting. He went to the ER but was not seen because of lack of approval from the Workman's Comp company. He has been resting with a heating pad. His examination shows some acute tenderness at the lumbosacral junction. He has a lot of spasm currently despite being on muscle relaxors and regular pai[n] medication. His motion is markedly limited.
A workers' compensation judge's decision to impose penalties and attorney fees is afforded much discretion and will not be disturbed absent manifest error. Smith v. Ventura Foods, 99-104 (La.App. 3 Cir. 6/30/99), 742 So.2d 941. We find no abuse of that discretion, given that Dr. Nason's medical records clearly document an acute aggravation of Mr. Fontenot's injury. LWCC's position that it was justified in denying Mr. Fontenot emergency treatment solely because he had already selected a treating physician is untenable.

Decree
For the above reasons, the judgment of the Office of Workers' Compensation is amended to reduce the award of penalties from $6,000.00 to $4,000.00. In all other respects, the judgment is affirmed. Costs of this appeal are assessed equally between Mr. Fontenot and LWCC.
AFFIRMED AS AMENDED.
WOODARD and PETERS, JJ., dissent and assign written reasons.
WOODARD, J., dissenting.
I respectfully dissent for the reasons I assigned in LeJeune v. Trend Services, Inc., 96-550 (La.App. 3 Cir. 6/4/97), 699 So.2d 95, and note that the second circuit has followed that rationale in Harvey v. BE&K Const. Co., 34,057 (La.App. 2 Cir. 11/15/00), 772 So.2d 949.
PETERS, J., dissenting.
I respectfully disagree with the majority's decision to reduce the workers' compensation judge's penalty award from $6,000.00 to $4,000.00 through a strained interpretation of La.R.S. 23:1201(F). Under La.R.S. 23:1201(F), it is the "[f]ailure to provide payment in accordance with this Section [La.R.S. 23:1201]" that "shall result in the assessment of a penalty." Pursuant to La.R.S. 23:1201(B), (C), and (D), "all such compensation then due" must be paid and it must be paid within the time specified. Additionally, pursuant to La. R.S. 23:1201(E), "[m]edical benefits payable" must be paid within the specified *1202 time. Thus, Subsections (B), (C), (D), and (E) essentially place `two requirements on the employer/insurerpayment of the correct amount of benefits and timely payment of those benefits.
An employer/insurer can violate these requirements in a number of ways. In the instant case, LWCC violated Subsection (B) by initially miscalculating the benefits and then again by improperly reducing TTD benefits to SEB. LWCC also violated Subsection (E) by failing to authorize emergency medical treatment. The majority suggests that the two separate violations of Subsection (B) give rise to only one penalty. In reaching this conclusion, the majority suggests that Mr. Fontenot has attempted to have the court "equate the word `claim' with `violation.'" While I concede that each instance of a continuing violation does not give rise to a new claim, each new claim requires a violation on the part of the employer/insurer. Importantly, when an employer/insurer miscalculates the benefits due, that is a violation which gives rise to a claim. Additionally, when that same employer/insurer improperly reduces the benefits being paid from TTD benefits to SEB, that transgression is a separate violation which gives rise to a separate claim. The former action has nothing to do with the latter. In the matter before us, the workers' compensation judge found two separate violations which gave rise to two separate claims under La.R.S. 23:1201(F). I have difficulty seeing how it can be interpreted any other way.
Through La.R.S. 23:1201(F), the employee has a means of discouraging such violations and motivating the recalcitrant or indifferent employer/insurer to comply with its obligations. As quoted by the majority, Williams v. Rush Masonry, Inc., 98-2271, p. 8 (La.6/29/99), 737 So.2d 41, 46, recognized that awards of penalties and attorney fees are "imposed to discourage indifference and undesirable conduct by employers and insurers."
The focus is on the conduct of the employer/insurer. An employer/insurer may exhibit indifference and undesirable conduct toward the employee in different ways, at different times and/or regarding different elements of an item of benefits to which the employee is entitled. However, as I appreciate the majority's interpretation, the employee may seek penalties to discourage the indifference and undesirable conduct of the employer/insurer only once concerning compensation benefits and only once concerning medical benefits. As such, the employer/insurer has carte blanche to behave as it wishes, and that without further consequence. Thus, the benefit/leverage given to the employee through La.R.S. 23:1201(F) is stripped away upon the first violation, and the employee is thereafter subject to the whim and caprice of the employer/insurer. Conceivably, an employer/insurer could initially refuse to pay mileage reimbursement due for medical travel, pay a $2,000.00 penalty in that regard, and then unreasonably delay payment of the more expensive medical services. In essence, the majority opinion extends the res judicata effect of the initial penalty award to all future violations by the employer/insurer, despite the employer/insurer's continuing obligation to provide benefits.
If, however, the majority opinion authorizes not just one penalty for the duration of the employer/insurer's obligation to pay benefits but authorizes one penalty for each 1008 claim that is filed, then the number of penalties the employee could recover would be controlled by the fortuity of the timing of the violations or his attorney's acumen in filing multiple 1008 forms for violations occurring within the same time frame. Thus, the employee encounters a form-over-substance situation, when it is the substance that should control, i.e., the employer/insurer's conduct, and not the form/timing of the presentation of the situation to a workers' compensation judge. A resourceful employee will be better served by filing separate 1008 forms for separate violations to preserve his penalty rights under La.R.S. 23:1201 for each individual claim. Of course, as argued by *1203 counsel for LWCC, the employer/insurer would surely seek consolidation of these claims, thus returning the injured employee to the penalizing effect of this majority decision. Of course, the employer/insurer would also raise the exception of res judicata, even for future actions, if penalized once.
Essentially, the majority's holding chips away at the quid-pro-quo arrangement contemplated by the legislature when it limited the employee to workers' compensation benefits. I would affirm the judgment below.