STATE OF LOUISIANA
COURT OF APPEAL, THIRD CIRCUIT

22-42

MICHAEL BOUDREAUX

VERSUS

TAKE 5, LLC

**********

APPEAL FROM THE
OFFICE OF WORKERS' COMPENSATION - # 4
PARISH OF LAFAYETTE, NO. 20-04639
PAULA MURPHY, WORKERS' COMPENSATION JUDGE

**********

ELIZABETH A. PICKETT
JUDGE

**********

Court composed of Elizabeth A. Pickett, Van H. Kyzar, and Candyce G. Perret, Judges.

AFFIRMED.

Christopher R. Philipp
Attorney at Law
P. O. Box 2369
Lafayette, LA 70502
(337) 235-9478
COUNSEL FOR PLAINTIFF- APPELLEE
    Michael Boudreaux

**Douglas R. Nielsen**
**Erica M. Ducoing**
**Patrick F. Cole**
**Thomas, Soileau, Jackson & Cole**
**401 Edwards Street, Suite 2015**
**Shreveport, LA 71101**
**(318) 216-5058**
**COUNSEL FOR DEFENDANT- APPELLANT**
    **Take 5, LLC**
    **Liberty Mutual Insurance Company**

**PICKETT, Judge.**

An employer and its insurer appeal a judgment awarding its employee temporary total disability benefits, medical benefits, penalties, and attorney fees. For the following reasons, we affirm the judgment.

## FACTS

On July 30, 2020, Michael Boudreaux filed a disputed claim for compensation against his employer, Take 5, LLC, and its insurer, Liberty Mutual Insurance Company, seeking workers' compensation benefits arising from an injury he allegedly sustained while working in the course and scope of his employment on July 8, 2020. In February 2021, the defendants filed a motion for summary judgment in which they asserted no evidence existed to show Mr. Boudreaux had a work accident on July 8, 2020.[1] Trial in the matter was held May 12, 2021.

Mr. Boudreaux was the only witness to testify at trial. He testified that he was the assistant manager at one of Take 5, LLC's oil change locations in Lafayette. He stated that his duties included managing the floor of that location, saving inventory, greeting customers, and working on vehicles which included changing oil. According to Mr. Boudreaux, the location where he was working on July 8, 2020, was very busy, and he worked in the "pit" under cars changing oil a lot that day. He explained that the employees at that location frequently tightened oil filters "really tight" and that throughout the course of the day on July 8 he struggled to loosen multiple filters. Mr. Boudreaux continued, relating that he had to work in a very cramped area and had little room to maneuver. He stated that he used a band wrench to remove some of the oil filters he changed that day, but

---

[1] Based on the record, the motion for summary judgment was tried simultaneously with the trial.

because some of the oil filters were overly tightened, he also had to use a breaker bar to loosen those filters.

Mr. Boudreaux further testified that he closed the shop that day and did not leave until about 6:00 p.m. After work, he visited with friends. He testified that when he got ready to leave his friends, he felt discomfort in his back. Mr. Boudreaux stated that he reported this to his supervisor that evening via a text message and that he did not feel he would be able to return to work the next day. Mr. Boudreaux testified that he had not injured or sought medical treatment for his back prior to July 8, 2020. He explained that he had sought medical treatment for only one injury prior to July 8, 2020, an injury to his face a number of years before. The defendants did not contradict his testimony.

In an email dated July 17, 2020, Mr. Boudreaux informed Take 5, LLC's Human Resources Manager that July 8, 2020, had been "a pretty busy steady day [and] I done a lot of [work in the] pit that day" and that he injured his "back pretty good." He further explained: "When I got off I felt the pain but didn't think it was anything but just a rough day but as the days went on it got worst (sic)[,] and now I'm just having a hard time dealing with it." Mr. Boudreaux also reported that he had not been able to sleep well or stand for long periods of time since his injury and that his back hurt sometimes when he was driving.

After not receiving a response to his email, Mr. Boudreaux emailed Take 5, LLC's Human Resources on July 22, 2020, requesting authorization for a medical evaluation by Dr. Joseph R. Bozzelle Jr. at St. Francis Medical Center in Lafayette for his injury that he sustained "pulling an over tighten (sic) oil filter in an awkward situation on July 8, 2020." Mr. Boudreaux testified that he initially sought medical treatment on his own but determined that he could not afford to pay

2

the charges. He then sought without success approval from the defendants to seek medical treatment at their expense.

Mr. Boudreaux began treating with Dr. Bozzelle on August 5, 2020. On that date, Dr. Bozzelle noted that Mr. Boudreaux had cervical, thoracic, and lumbar pain with muscle spasms; facet joint tenderness at all three levels as well as lumbar radiculopathy; and reported his pain as a six out of ten. He recommended a series of x-rays of Mr. Boudreaux's cervical, thoracic, and lumbar spines; physical therapy; and prescribed a muscle relaxer and a pain reliever. Dr. Bozzelle reported that Mr. Boudreaux could perform light work.

Mr. Boudreaux returned on September 3, 2020. Dr. Bozzelle's findings remained the same; however, Mr. Boudreaux's pain had increased to eight out of ten. As of that date, none of the treatment recommended by Dr. Bozzelle had been approved. Dr. Bozzelle changed Mr. Boudreaux's work status to "unable to work pending treatment." Liberty Mutual then authorized the treatment and testing approved by Dr. Bozzelle, and Mr. Boudreaux was able to begin physical therapy, have x-rays taken, and receive some medications. However, on October 10, 2020, Liberty Mutual refused to pay for treatment provided to Mr. Boudreaux, noting "The service relates to a case pending litigation. Payment is withheld subject to the final disposition of the case." Mr. Boudreaux continued treatment with Dr. Bozzelle through December 20, 2020. Dr. Bozzelle's medical findings and work status report remained the same. The medical expenses remained unpaid at trial.

On cross-examination, Mr. Boudreaux explained that he did not feel back pain on July 8, 2020, until after he left visiting his friends. He also testified that he did not have any pain at work that day and further explained that he had worked steady and never had a break. When questioned about a notation in Dr. Bozzelle's records that he felt symptoms immediately after he twisted his back and that the

3

pain increased during the afternoon of July 8, 2020, Mr. Boudreaux denied making those statements to Dr. Bozzelle's physician's assistant.

After Mr. Boudreaux rested his case, the defendants moved for an involuntary dismissal of his claims. Counsel for the parties presented arguments on the motion, and the workers' compensation judge (WCJ) took the matter under advisement. The defendants did not present any evidence at trial other than Mr. Boudreaux's deposition.

On May 18, 2021, the WCJ issued a judgment denying the defendants' motion for summary judgment. Thereafter, on August 13, 2021, the WCJ issued written Reasons for Judgment and Judgment in which she held that "Mr. Boudreaux is entitled to the presumption of causation and [] met his burden of proof" that he had an accident within the course and scope of his employment with Take 5, LLC which caused him disabling injuries. The WCJ further determined that Mr. Boudreaux proved he was unable to work pending medical treatment, had not returned to work, and was, therefore, entitled to total temporary disability benefits, medical treatment, penalties totaling $7,805.16, and attorney fees in the amount of $11,000.00.

**ASSIGNMENTS OF ERROR**

Take 5, LLC and Liberty Mutual Insurance Company appealed the WCJ's judgment and identify four issues for our review:

1) Can a workers' compensation claimant be found to have sustained a compensable work-accident when there was no sudden precipitous event, and the claimant experienced no pain while at work?

2) Can a workers' compensation claimant be awarded medical and indemnity benefits when he has not sustained a compensable work-accident?

3) Can a workers' compensation claimant be awarded temporary total disability benefits greater than two-thirds of his pre-accident average weekly wage?

4) Can a workers' compensation claimant be awarded penalties and attorney fees when he has not proven he was involved in a compensable work-accident?

## DISCUSSION

### *Burden of Proof*

To be awarded workers' compensation benefits an employee must prove that he suffered a personal injury arising out of and in the course of his employment. La.R.S. 23:1031; *McLin v. Indus. Specialty Contractors, Inc.*, 02-1539 (La. 7/2/03), 851 So.2d 1135. A compensable work accident is defined by La.R.S. 23:1021(1) to be "an unexpected or unforeseen actual, identifiable, precipitous event happening suddenly or violently, with or without human fault, and directly producing at the time objective findings of an injury which is more than simply a gradual deterioration or progressive degeneration."

In *Bruno v. Harbert International Inc.*, 593 So.2d 357, 361 (La.1992) (citations omitted), the supreme court addressed how an employee can satisfy his burden of proof with only his testimony, stating:

> A worker's testimony alone may be sufficient to discharge this burden of proof, provided two elements are satisfied: (1) no other evidence discredits or casts serious doubt upon the worker's version of the incident; and (2) the worker's testimony is corroborated by the circumstances following the alleged incident. Corroboration may also be provided by medical evidence.

When determining whether a claimant has satisfied his burden of proof, the trier of fact "should accept as true a witness's uncontradicted testimony, although the witness is a party, absent 'circumstances casting suspicion on the reliability of this testimony.'" *Id*. (quoting *West v. Bayou Vista Manor, Inc.,* 371 So.2d 1146, 1147 (La.1979); *Holiday v. Borden Chem.,* 508 So.2d 1381, 1383 (La.1987)).

5

*Standard of Review*

The defendants' assigned errors arise from the WCJ's finding that Mr. Boudreaux proved he suffered an accident on July 8, 2020. In workers' compensation matters, factual findings are subject to the manifest error standard of review. *Stoute v. Petroleum Ctr.,* 07-1533 (La.App. 3 Cir. 4/2/08), 980 So.2d 818. On review, the appellate court must "focus on whether the trier of fact's determinations were reasonable based on the record as a whole" rather than re-weigh the evidence. *Marange v. Custom Metal Fabricators, Inc.*, 11-2678, p. 8 (La. 7/2/12), 93 So.3d 1253, 1259. If there are two permissible views of the evidence, then the factfinder's choice between them cannot be manifestly erroneous. *Ardoin v. Firestone Polymers, L.L.C.*, 10-245 (La. 1/19/11), 56 So.3d 215; *see also Bruno*, 593 So.2d 357. If there is a conflict in the evidence, reasonable inferences of fact cannot be disturbed. *LeJeune v. Trend Servs. Inc.,* 96,550 (La.App. 3 Cir. 6/4/97), 699 So.2d 95. Additionally, if the WCJ's factual findings arise from a determination that a witness is credible, that finding should be given great deference upon appeal. *Rosell v. ESCO,* 549 So.2d 840 (La.1989).

*Analysis*

After thoroughly considering Mr. Boudreaux's trial and deposition testimony, his emails to the defendants, and his medical records, the WCJ determined that Mr. Boudreaux proved he was injured in an accident on July 8, 2020, explaining, in part:

> Claimant asserts his physically using the breaker bar and band wrench to loosen the overtightened filter caused his injury. He testified that at the location he was working, there are often overtightened oil filters and using the breaker bar and band wrench was routine and specifically that July 8, 2020, was a "pretty busy steady day I done a lot of pit that day." Claimant further testified that the pain began later that same day once he ended his shift, that while visiting friends he couldn't stand and at home he felt pain. This court makes the finding that Claimant was completing a routine task and is

able to identify with sufficient particularity the time, place, and manner of the manifestation of the injury.

In assessing the testimony of Mr. Boudreaux, the court observed his demeanor, gestures, and reactions to questions. The court makes a specific finding that Mr. Boudreaux's testimony was credible and his testimony was corroborated by the medical evidence and the accident report and further finds that no evidence casted (sic) serious doubt upon his version of the incident. The court also finds that the identifiable and precipitous event occurred when he used the breaker bar/band wrench to loosen the overtightened filter. Thus, Mr. Boudreaux met his burden to prove a workplace accident on July 8, 2020.

The defendants argue that the WCJ erred in finding Mr. Boudreaux's testimony credible. They argue that his deposition testimony and information contained in his emails is inconsistent with his trial testimony. Our review of Mr. Broussard's December 10, 2020 deposition shows, however, that while his explanation as to how he injured his back is not identical to his trial testimony, his emails to the defendants, and his reports to Dr. Bozzelle, it is consistent with those accounts. When considered in light of the totality of the evidence, the WCJ's assessment of Mr. Boudreaux's credibility is reasonable, and we defer to her assessment.

The defendants next argue that Mr. Boudreaux did not prove that an "actual, identifiable, precipitous event" caused him injury in the course of his work because he did not identify a specific movement or action that caused him pain during the course of his work on July 8, 2020. Therefore, he failed to carry his burden of proof, and the WCJ erred in finding otherwise. The defendants cite *Sanders v. Grace Nursing Home*, 98-1344 (La.App.1 Cir. 9/24/99), 754 So.2d 1024, *writ denied*, 99-3090 (La. 1/7/00), 752 So.2d 868, where the court held that the claimant had not proved a compensable work-accident because she completed her work-shift without experiencing any pain and could not cite a particular incident where the pain changed or became different and was identified at work. The facts

in *Sanders* are significantly different from the facts herein because the claimant "did not experience any pain on that day at work or at home, or the following two days (Saturday and Sunday) while she was off work. However, Sunday night she began experiencing pain in her back." *Id*. at 1024. The facts in *Sanders* are very different from the facts herein, and it has no bearing on Mr. Boudreaux's claim.

The defendants also cite *Bourgeois v. Seabright Insurance Co.*, 12-834 (La.App. 5 Cir. 4/10/13), 115 So.3d 50, where the claimant testified that he did not know exactly when his injury occurred. The claimant had been climbing in and out of a man basket and on top of pipes all day, which was part of his regular job duties, and woke up at 2:00 a.m. with pain in his knee. He reported to his physician that he "did not recall experiencing a traumatic or painful event or doing anything out of the ordinary" the day his knee was injured. *Id*. at 53. The court held that because the claimant could not identify an actual precipitous event that caused him injury, he failed to carry his burden of proof. Unlike the claimant in *Bourgeois*, Mr. Boudreaux explained how his work on July 8, 2020, required him to work without a break in difficult positions in a cramped work space to remove overtightened oil filters using a breaker bar and band wrench.

As the WCJ observed, this court has held that an employee can prove an "accident" occurred when he proves the occurrence of "a work-related event, which may seem to be a customary or routine work activity, which results in an injury to the employee." *Richard v. Workover & Completion,* 00-794, p. 4 (La.App. 3 Cir. 12/6/00), 774 So.2d 361, 364. In *Richard*, the claimant, a roughneck on a land workover rig, testified that due to rainy work conditions, he had to wear rubber boots for three days, and the rubber boots rubbed on the lower portion of his left leg which caused it to swell. The claimant continued working "believing that if he finished the work week and was able to rest the leg, the

swelling would go down." *Id.* However, he realized on the Saturday following the work week that the rubbing of his boot had caused an ulcer. This court affirmed the WCJ's rejection of the very argument the defendants make herein. We note the time frame of Mr. Boudreaux's "accident" and his report of his injury to his supervisor was within hours of the end of the workday on which his accident occurred as compared to the days in *Richard*.

An "'actual, identifiable, precipitous event' may also include a routine movement or task that the employee regularly performs, if the claimant is able to identify with some particularity as to time, place and manner, the objective manifestation of the accidental injury." *McCall v. Wal-Mart Stores, Inc.,* 02-1343, pp. 4-5 (La.App. 3 Cir. 3/5/03), 846 So.2d 832, 835-36, *writs denied,* 03-1329, 03-1343 (La. 9/19/03), 853 So.2d 639, 641 (quoting *Thompson v. Orleans Parish Sch. Bd.,* 00-1230, p. 3 (La.App. 4 Cir. 3/21/01), 786 So.2d 128,130).

The WCJ concluded that "an identifiable and precipitous event occurred when [Mr. Boudreaux] used the breaker bar/band wrench to loosen the overtightened filter." Mr. Boudreaux reported this to the defendants the evening after it occurred and to Dr. Bozzelle shortly after his accident.

In addition to proving an accident, Mr. Boudreaux had to prove that his accident caused a disabling injury. *Lenox v. Cent. La. Spokes, LLC*, 18-556 (La.App. 3 Cir. 2/13/19), 265 So.3d 834. An employee may be aided in satisfying his burden of proof by a presumption of causation. *Id.* To take advantage of this presumption, the employee must prove: (1) he had not exhibited disabling symptoms before his accident; (2) his symptoms began with or became apparent after the accident; and (3) medical and/or circumstantial evidence shows "a reasonable possibility of causal connection between the accident and onset of the

disabling symptoms." *Id*. at 838 (quoting *Welborn v. Thompson Const*., 15-217, pp. 4-5 (La.App. 1 Cir. 2/26/16), 191 So.3d 1086, 1088-89).

The WCJ determined that Mr. Boudreaux proved he was entitled to be aided in satisfying his burden of proof by this presumption for the following reasons: (1) he did not have any back injury prior to July 8, 2020, that required him to seek medical treatment; and (2) medical records substantiated his testimony that he injured his back on July 8, 2020 while at work.

The defendants seek to overturn the WCJ's findings of fact by pointing out slight differences in Mr. Boudreaux's reports of how he was injured and when he began experiencing back pain. The defendants presented no defense at trial, resting on their contention that Mr. Boudreaux had not proved his claim. The crux of Mr. Boudreaux's claim is his credibility. The defendants had the opportunity to challenge Mr. Boudreaux's credibility but chose not to do so. Mr. Boudreaux testified that he sent his supervisor a text message the evening of July 8, 2020, where he explained that he injured his back at work that day and that he did not think he would be able to go to work the next day. When asked if he had a copy of the text, Mr. Boudreaux testified that he did not because his attorney instructed him to cease contact with his employer and that he deleted all text messages to his employer from his phone. The defendants argue that his failure to produce the text message renders his credibility questionable. This argument ignores the fact that they had the opportunity to contradict Mr. Boudreaux's testimony and attack his credibility by having his supervisor testify at trial to deny his account of the text message but did not.

The defendants have failed to show the WCJ erred in her assessment of Mr. Boudreaux's credibility and her determination that he proved that he suffered a

personal injury while in the course and scope of his work with Take 5, LLC and is entitled to indemnity and medical benefits.

### *Indemnity Benefits*

The defendants urge that even if this court finds the WCJ properly awarded Mr. Boudreaux "back-owed" indemnity benefits, a mathematical error occurred when the parties stipulated to the amount that is owed to Mr. Boudreaux which must be corrected. The parties stipulated that Mr. Boudreaux's weekly wages were $920.25 and that he is entitled to weekly indemnity benefits in the amount of $688.00. The defendants acknowledge that "[a] stipulation has the effect of a judicial admission or confession, which binds all parties and the court" but assert that a stipulation is not binding on the parties when it is a "derogation of law." *R.J. D'Hemecourt Petroleum, Inc. v. McNamara*, 444 So.2d 600, 601 (La.1983). *See also, Allison v. Citgo Petro. Corp.*, 18-302 (La.App. 3 Cir. 12/19/18), 262 So.3d 936.

The defendants' argument fails to acknowledge that the only evidence in the record of Mr. Boudreaux's average weekly wage is the stipulation. Louisiana Revised Statutes 23:1221 governs the payment of workers' compensation benefits and provides that a claimant is entitled to total temporary disability benefits which "shall be paid . . . sixty-six and two-thirds percent of wages during the period of such disability." Consequently, it is impossible for this court to determine whether the parties stipulated to the wrong average weekly wage or miscalculated his total temporary disability benefits. For these reasons, there is no basis for this court to conclude that the parties' stipulation is in derogation of the law, and we affirm the WCJ's award of $688.00 per week total temporary disability benefits.

### *Penalties and Attorney Fees*

The defendants contest the WCJ's award of penalties and attorney fees to Mr. Boudreaux. "Awards of penalties and attorney's fees in workers' compensation are essentially penal in nature, being imposed to discourage indifference and undesirable conduct by employers and insurers." *Williams v. Rush Masonry, Inc.*, 98-2271, pp. 8-9 (La. 6/29/99), 737 So.2d 41, 46 (citation omitted). "[P]enal statutes are to be strictly construed." *Id.* When considering a claim for penalties and attorney fees, "a court must ascertain whether the employer or his insurer engaged in a nonfrivolous legal dispute or possessed factual and/or medical information to reasonably counter the factual and medical information presented by the claimant throughout the time he refused to pay all or part of the benefits allegedly owed." *Brown v. Texas-LA Cartage, Inc.*, 98-1063, p. 9 (La. 12/1/98), 721 So.2d 885, 890. A court should not award penalties and attorney fees if the employer presents a "serious defense" in "good faith." *Savoy v. Cecil Perry Improvement, Co.*, 96-889, p. 17 (La.App. 3 Cir. 2/5/97), 691 So.2d 692, 702.

The defendants also argue that the WCJ erred in awarding penalties and attorney fees because although she concluded that Mr. Boudreaux proved his claims, the facts were such that their failure to pay benefits and medical expenses were reasonable. Absent manifest error, the WCJ's decision to award penalties and attorney fees should not be reversed on appeal. *Vidrine v. Teche Elec. Supply, L.L.C.*, 08-1287 (La.App. 3 Cir. 4/1/09), 6 So.3d 1012, *writ denied,* 09-964 (La. 6/19/09), 10 So.3d 739.

Penalties are authorized by La.R.S. 23:1201(F) for an employer's failure to pay compensation benefits and medical benefits and to timely authorize medical treatment. Penalties and attorney fees provided for by this section are to be assessed based on fault; however, these provisions do not apply if the employer

12

and/or its insurer reasonably controverts the claim for benefits. La.R.S. 23:1201(F)(1)-(2).

When considering Mr. Boudreaux's claim for penalties and attorney fees, the WCJ cited the standard outlined by the supreme court in *Brown*, 721 So.2d 885, then explained:

> Considering the law and evidence, the court finds that the Defendants failed to reasonably controvert the claim. They presented no medical evidence to dispute the findings of Dr. Bozzelle nor any evidence to show that the Claimant had any prior medical conditions regarding his back or neck when they decided to deny the claim. Defendants did not pay indemnity benefits nor any of the medical bills from St. Francis Medical Clinic or Elite Care RX, LLC. Defendants also untimely authorized treatment with Dr. Bozzelle.

The WCJ then awarded Mr. Boudreaux penalties against the defendants totaling $7,805.16, which represents a $2,000.00 penalty for failure to pay indemnity benefits; a $2,000.00 penalty for failure to pay the medical bills from St. Francis Medical Clinic; a $2,000.00 penalty for failure to pay the medical bills from Elite Care RX, LLC; and a penalty of $1,805.16 for failure to timely authorize medical treatment.

The defendants argue that they "clearly articulated objective reasons" for denying Mr. Boudreaux's claim for workers' compensation benefits, citing Mr. Boudreaux's alleged failure to prove that he was injured in an accident as defined by La.R.S. 23:1021(1) and that his injury is causally related to his accident. The defendants presented no defense to Mr. Boudreaux's claims and failed to cast doubt on his credibility at trial by having his supervisor testify at trial to deny that he received a text from Mr. Boudreaux on July 8, 2020, reporting his injury and back pain. Moreover, they authorized medical treatment but refused to pay for the treatment because it related to a "matter being litigated." The WCJ did not err in awarding Mr. Boudreaux penalties and attorney fees.

13

Mr. Boudreaux asserts in his appellate brief that he answered the defendants' appeal and asked that his attorney be awarded an additional $5,000.00 for services he rendered in conjunction with this appeal.  A review of the records does not show that Mr. Boudreaux filed an answer to the appeal, and his request for additional attorney fees is denied.

## DISPOSITION

The Workers Compensation Judge's judgment is affirmed.  All costs are assessed against Take 5, LLC and Liberty Mutual Insurance Company.

**AFFIRMED.**